IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDREW KANE, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. L-08-1157 |
| | * | |
| BRIAN LEWIS, et al. | * | |
| Defendants. | * | |
| | * | |

*************

## MEMORANDUM

This is a wrongful death case. The plaintiff, Andrew Kane ("Kane"), is the father of Andrew Cornish ("Cornish"). Cornish was fatally wounded during the execution of a narcotics search warrant at his apartment in Cambridge, Maryland, in 2005. On March 26, 2010, the Court ruled that a fact dispute exists as to whether the officers knocked and announced prior to entering Mr. Cornish's apartment. This issue shall be presented to a jury.

Now pending is defendants' motion *in limine* to limit Plaintiff's damages and to exclude all evidence concerning the shooting of Mr. Cornish at trial. A hearing was held on June 26, 2010. As previously determined by the Court, Kane can, at a minimum, recover nominal damages if the jury determines that the officers failed to knock and announce. (Paper No. 72). Whether Kane can recover actual damages for Cornish's emotional distress and death requires further inquiry.

For the reasons stated herein, the defendants' motion is GRANTED in part and DENIED in part.

1

I.      BACKGROUND

The background is set forth fully in the Court's Memorandum Opinion of March 26, 2010 (Paper No. 63), and need not be repeated here.

II.     ANALYSIS

   A.   **Limiting Damages**

The United States Supreme Court has ruled that officers must, absent exigent circumstances, knock and announce their presence and purpose before entering a dwelling. Wilson v. Arkansas, 514 U.S. 927, 934 (1995). One of the purposes of this requirement is to prevent harm to the occupants "because an unannounced entry may provoke violence in supposed self-defense by the surprised occupant." Hudson v. Michigan, 547 U.S. 586, 594 (2006).

Under Carey v. Piphus, a plaintiff may recover actual damages for a § 1983 violation. 435 U.S. 247, 255, 258–59, 264 (1978). As formulated by the Supreme Court, Kane may sue the police for any harm to Cornish actually caused by the failure to knock and announce. Damages may not be presumed, but must be proven by competent, sufficient evidence. Carey, 477 U.S. at 262–63 & n.20.

A dispute of fact exists concerning whether the police knocked and announced their presence before entering Cornish's apartment. The officers who executed the search warrant claim that they loudly and repeatedly pounded on Cornish's door and loudly identified themselves before entering. See, e.g., Def. Ex. 1, p. 36. Cornish's unfortunate death seals his lips on the subject. Cornish's downstairs neighbors, however, have testified that they heard nothing before the police burst into their apartment. Def. Ex. 12, p. 24, 26; Pl. Ex. 1, p. 40–41,

2

43. Because the officers synchronized their entry into both the Camper/Latting and Cornish apartments, and because the walls were thin, the silence supports the proposition that the police failed to knock and announce before entering either apartment. At trial, the jury must weigh the evidence and resolve the dispute. Did or did not the officers knock and announce their presence?

If the jury finds that the officers did not knock and announce, and the officers are not otherwise protected by qualified immunity, Kane seeks three measures of damage. First, he seeks nominal damages for the violation itself. Second, he seeks damages for the emotional distress Cornish experienced during what he thought was a home invasion. Emotional distress damages would cover the period beginning when the police burst into the apartment and ending when Cornish either realized that the intruders were the police or he was shot and killed. Third, Kane seeks actual damages for Cornish's shooting and death.

Taking these three categories in turn, the Court concludes that the first two are potentially recoverable. Defendants concede that nominal damages may be sought at trial. Based on the evidentiary record, a fair-minded jury could conclude that Cornish mistakenly believed himself to be the victim of a home invasion. As mentioned, the damage period would end either when Cornish realized that the invaders were the police or when he was shot and killed.

The sticking point concerns the third category. If Cornish knew that the intruders were the police when he advanced on them, there can be no recovery for his death, even if there was an initial failure to knock and announce. Even assuming that the officers' entry was unlawful, they would not be liable for harm produced by a superseding cause, such as an occupant's knowing decision to attack them. See Warwick v. Bodine, 72 F.3d 393 (3d Cir. 1995); see also Trask v. Franco, 446 F.3d 1036 (10th Cir. 2006) (adopting Bodine); Estate of Sowards v. City of Trenton, 125 Fed. App'x 31 (6th Cir. 2005) (unpublished) (same). Stated otherwise, once

3

Cornish learned the information the knock and announce requirement was calculated to supply, he was obligated to stay his hand. Any decision to attack the officers would constitute a superseding cause, relieving the officers of liability for events happening after the break in the chain of causation.

In order to award damages for Cornish's death, a fair-minded jury would be required to find that his misapprehension continued until his death. Defendants contend that the record would not support such a finding. The Court agrees. The police testified that after entering the apartment they were repeatedly shouting "Cambridge police" and "search warrant." See, e.g., Def. Ex. 1, p. 34–48; Def. Ex. 2, p. 112–13; Def. Ex. 5, p. 55–56; Def. Ex. 6, p. 32. It is undisputed that the officers were all readily identifiable as the police by virtue of their distinctive clothing, which included black shirts and raid vests bearing the words "POLICE" on the front and back, black baseball caps that read "Cambridge Police," and actual badges clipped to their left breast pockets. See Def. Ex. 1, p. 33–34; Def. Ex. 2, 59–60, 62–63, 67; Def. Ex. 6, p. 6. Cornish was shot in the living room, just before he reached the kitchen, and there was sufficient light for him to have recognized the officers as officers. The television in the living room was on as was the light in the kitchen. See, e.g., Def. Ex. 1, p. 39–40, Def. Ex. 2, p. 108–10; Def. Ex. 5, p. 46–47; Def. Ex. 6, p. 25.

Although Camper's testimony is germane with respect to the officers' entry into both apartments,[1] her observations shed no light on what transpired in Cornish's apartment thereafter. She stated that after the officers entered her apartment, she heard them repeatedly instructing Latting to "get down." Def. Ex. 12, p.11, 25. The officers then entered the bedroom where Camper was located, identified themselves as the police, and instructed her to stay put. Id. at 39.

---

[1] Latting's testimony is also germane with respect to the entry. His testimony is silent, however, as to what sounds he may or may not have heard coming from Cornish's apartment. See Pl. Ex. 1, p. 40–41.

4

The officers were making so much commotion in her apartment that she could not distinguish between noises in her apartment and those that may have come from upstairs. Id. at 37–39. She did not even hear the gun shots. Id. at 12.

In order for Kane to recover on the wrongful death claim, the jury must find that Cornish did not appreciate, at the moment he advanced on Detective Brian Lewis, that the intruders were the police. Given the state of the record, such a finding could only be based on speculation. Stated otherwise, there is insufficient evidence from which a reasonable jury could conclude that the officers' shouts and appearance failed to apprise Cornish of their identity when he advanced on Lewis with his arm raised. Accordingly, wrongful death damages will not be presented to the jury.

**B.     Excluding Evidence Concerning the Shooting and Death of Cornish**

In their motion, the defendants also request that all evidence concerning the shooting and death of Cornish be excluded. The Court sees no reason to exclude this evidence. The jury is entitled to know why Cornish is not available to testify. The jury needs to know about the shooting in order to determine the period for which Kane is entitled to seek emotional distress damages. The Court will give an appropriate limiting instruction.

**III.    CONCLUSION**

For the foregoing reasons, the Court will, by separate Order of even date, GRANT in part and DENY in part defendants' Motion *in Limine*.

Dated this 9th day of July, 2010.

/s/
Benson Everett Legg
United States District Judge